IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FEDJA ROCHLING, M.D., ) | Case No 8:10-CV-00302 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| DEPARTMENT OF VETERANS ) | |
| AFFAIRS, ERIC K. SHINSEKI, in his ) | |
| official capacity as the Secretary for the ) | |
| Department of Veterans Affairs, the ) | |
| DEPARTMENT OF HEALTH AND ) | |
| HUMAN SERVICES and KATHLEEN ) | |
| SEBELIUS, in her official capacity as the ) | |
| Secretary for the Department of Health ) | |
| and Human Services, ) | |
| ) | |
| Defendants. ) | |

COMES NOW the Plaintiff Fedja Rochling, M.D., and, for his causes of action against Defendants, states and alleges as follows:

**PARTIES**

1. Fedja Rochling, M.D. ("Dr. Rochling") is a resident of Douglas County, Nebraska.

2. The United States Department of Veterans Affairs ("VA") is a federal agency, which owns and operates medical facilities throughout the United States. Eric K. Shinseki is the Secretary of the Department of Veterans Affairs and responsible for the rulemaking and administration of the Department.

3. The Department of Health and Human Services ("DHHS") is the Federal Agency charged with maintaining the National Practitioner Data Bank ("NPDB"). Kathleen Sebelius is

the Secretary of the Department of Health and Human Services and responsible for the rulemaking of the DHHS and proper administration of the NPDB.

## JURISDICTION AND VENUE

4. This Court has jurisdiction, and the VA has waived sovereign immunity, under the Privacy Act 5 U.S.C.A § 552a (e)(6) and (g), and the Administrative Procedure Act 5 U.S.C.A. § 701 *et seq*.

5. This Court is afforded jurisdiction under the Declaratory Judgment Act, 28 U.S.C.A. § 2201 *et seq*., so that the Court might provide Dr. Rochling equitable and conclusive relief.

6. This Court has subject matter jurisdiction over Dr. Rochling's claim regarding the VA's violation of Dr. Rochling's Fifth Amendment Constitutional right to Due Process of law.

7. Pursuant to 28 U.S.C. § 1391(e), venue is proper in the United States District Court for the District of Nebraska in that Plaintiff is a resident of the state of Nebraska.

## FACTS AND ALLEGATIONS

### Background

8. During the relevant timeframe including, but not limited to, August through September, 2000, Dr. Rochling was employed by defendant Department of Veterans Affairs as an internal medicine physician specializing in Gastroenterology.

9. During the relevant timeframe Dr. Rochling was assigned to, and working at, the Little Rock, Arkansas, Veterans Administration Medical Center ("VAMC").

10. Upon information and belief, on or about August 31, 2000, a patient was transferred to the Little Rock, Arkansas, VAMC from a different VAMC; the Muskogee VAMC in Alabama.

11. Upon information and belief, on or about August 21, 2000, while at the Muskogee VAMC and approximately ten days prior to the patient's transfer to the Little Rock VAMC, the patient referred to in paragraph 10 underwent a laparoscopic cholecystectomy and liver biopsy performed by physicians at the Muskogee VAMC. The patient had a history of alcoholic liver disease with ongoing active alcohol consumption, viral hepatitis and cirrhosis and, following the above described procedures, developed jaundice, abdominal pain and light-colored stools.

12. Upon the August 31, 2000, transfer to the Little Rock VAMC, the patient referred to in paragraph 10 came under the care of the Internal Medicine service of the Little Rock VAMC including Dr. Rochling who was the consultant attending Gastroenterologist of record on three of the six days in which the Gastroenterology service followed the patient at the Little Rock, Arkansas VAMC. At all times relevant herein, the treatment rendered directly by Dr. Rochling met the applicable standard of care.

13. On September 7, 2000, the patient passed away.

## The VA's Settlement Without Notice of Suit

14. On or about April 27, 2001, defendant Department of Veterans Affair ("VA") received a tort claim ("the claim") regarding the death of the patient referenced in paragraph 10. The claim alleged that on August 21, 2000:

> VA surgeon placed clips on the patient's common bile duct and left them there when the surgery was completed, which was below applicable standards of care. Following the surgery the patient began sufferings (sic), signs and findings indicative of biliary obstruction, Nevertheless, the VA staff failed to timely recognize these signs symptoms and findings, and failed to follow-up with the appropriate imaging studies and corrective surgery. As a proximate result of the foregoing the patient died.

15. The claim did not name Dr. Rochling as a responsible party and no malpractice suit or claim naming Dr. Rochling as a responsible party was ever filed in relation to the death of the patient.

3

16. The VA settled the patient's claim for a payment of money on or about March 18, 2003.

17. As of the date of the settlement, March 18, 2003, the VA had not notified Dr. Rochling that any claim had been made in relation to the patient referred to in paragraph 10.

18. Once the regional counsel had determined a settlement payment would be made, the VHA Handbook section 1100.17, which was in effect at the time, required the regional counsel to notify the facility and the Director, Office of Medical Legal Affairs of the settlement.

19. Within thirty days of the settlement, VHA Handbook section 1100.17 required the regional counsel to forward all medical records, reports and information, with the exception of the provider's written statement, which had not been obtained, to the Director, Office of Medical-Legal Affairs.

20. Only then, did the VHA Handbook section 1100.17 require the facility Director to notify the practitioner(s) that they were under review.

21. On or about January 9, 2004, almost one year after the VA settled the patient's claim, Dr. Rochling received a memorandum from the VA simultaneously providing Dr. Rochling notice of 1) the existence of the claim and 2) that the VA had already settled the claim. The memorandum, attached as Exhibit "A," stated that the VA Medical Legal Affairs had reviewed its settlement and determined that Dr. Rochling should be notified of the tort claim payment because the VA's payment could result in Dr. Rochling being reported to the National Provider Data Bank ("NPDB").

22. Once he had notice of the claim and the subsequent settlement, on or about March 5, 2004, Dr. Rochling submitted information regarding the treatment of the patient. Dr. Rochling

submitted this written response to the VA within sixty days of the VA's notification as required by VHA Handbook 1100.17.  Dr. Rochling's March 5, 2004, response is attached as Exhibit "B."

### The VA's Retroactive Determination of Fault

23. Under 42 U.S.C.A. § 11131 of the Health Care Quality Improvement Act ("HCQIA") entities are required to report settlements that the entity has made on behalf of individuals, to the National Practitioner Data Bank ("NPBD").

24. 38 C.F.R. § 46.3 specifically requires the VA to report to the NPDB, "any payment <u>for the benefit of a physician</u>, dentist, or other license health care practitioner which was made as a result of a settlement of judgment of a claim of medical malpractice.   The report will identify the physician, dentist, or other licensed health care practitioner for whose benefit the payment is made." (*emphasis added*).

25. 42 U.S.C. § 11152(b) required the Department of Health and Human Services and the Department of Veterans Affairs to enter into a Memorandum of Understanding to apply the reporting requirements of the HCQIA to hospitals, facilities and health care providers under the jurisdiction of the VA.

26. The Memorandum of Understanding entered into by the Department of Health and Human Services and the Department of Veterans Affairs in section A.1. requires that:

> The VA will file a report with the National Practioner Data Bank, in accordance with regulations at 45 CFR Part 60 Subpart B, as applicable, regarding any payment for the benefit of a physician, dentist, or other licensed health care practitioner which was made as the result of a settlement or judgment of a claim of medical malpractice.  The VA will identify the physician, dentist or other licensed health care practitioner for whose benefit the payment is made according to its own procedures.  The report will be filed within 30 days of the date the payment is made.

27. The VA's practice at the time of the claim referenced herein was to settle claims of medical malpractice and make payment <u>before</u> convening a review panel to determine for

whose benefit the payment would be made and <u>without notifying</u> practitioners that their actions were, or may be at a later date, under review.

28.     It was not until the VA issued VHA Directive 2004-24 on June 10, 2004, that the VA modified its procedure to provide written notification to all licensed practitioners assigned to a patient within 30 days of the date that Regional Counsel notifies the Director that a claim for medical malpractice has been filed.  The VA's issuance of VHA Directive 2004-024 confirms that at the time the VA settled the claim, the VA Handbook did not require the VA to provide notice of a claim and chance to contest or defend the claim prior to settlement payment.

29.     VHA Handbook § 1100.17, only required a review panel to assess which practitioners were involved in or responsible for the care of the patient and "specifically note for each of the involved practitioners whether there was substandard care, professional incompetence or professional misconduct" <u>after settlement</u>, for the purposes of determining whether a provider would be reported to the NPDB.

30.     According to the VHA Handbook 1100.17, section 5.c.(1), the VA would consider a settlement "to have been made for the benefit of a physician" if the Director, Office of Medical-Legal Affairs, informed the facility director that at least the majority of the review panel determined that the VA's settlement "payment was related to substandard care, professional incompetence or professional misconduct on the part of the physician."

31.     VHA Handbook 1100.17, section 5.c.(8) provided that if the review panel determined that the "standard of care was met and there was no professional incompetence," then the VA had not made settlement on the physician's behalf and the physician would not be reported to the NPDB.

6

32. VHA Handbook 1100.17, section 5.c.(8), also provided that if the VA's settlement was for "circumstances beyond the control of the practitioner (including, but not limited to, power failure, accidents unrelated to patient care, drugs mislabeled by the supplier, equipment malfunction, etc.)," then a practitioner would not be reported.

### The Review Panel

33. Upon information and belief, a VA review panel was convened to review the settlement payment made to settle the patient's claim in this case. The panel specifically reviewed the actions of Dr. Rochling.

34. Under VHA Handbook § 1100.17 the VA review panel was required to:

> consist of, at a minimum, three off-station reviewers who are health care professionals, including at least one reviewer who is a member of the profession or occupation of the practitioner(s) represented in the case and/or claim under review.

The panelist who was designated as a "primary reviewer" was to review the file and presented the claim to the panel during the deliberations process. The primary reviewer was also required to be of the same profession or occupation as the practitioner under review.

35. In this case, there was no Gastroenterologist on the VA panel. As a result, the VA did not designate a member of Dr. Rochling's profession or occupation as a primary reviewer or include a member of Dr. Rochling's profession or occupation on its panel. Instead, upon information and belief, the VA relied solely upon a general surgeon allegedly experienced in laparoscopic cholecystectomy and endoscopic retrograde cholangiopancreatography (ERCP).

36. Nonetheless, upon information and belief, the VA review panel convened on or about July 9, 2004, and determined that the settlement payment which the VA had previously made to satisfy the claim had been for the benefit of Dr. Rochling.

7

37. Upon information and belief the VA panel did not exercise its discretion, as described in VHA Handbook § 1100.17, to consult or request a review by a physician specializing in gastroenterology to determine the standard of care for Dr. Rochling as a gastroenterologist. Rather, the VA review panel relied upon information created and compiled by the regional counsel. That information had been forwarded to the Director, Office of Medical-Legal Affairs, in determining for whose benefit the settlement had been made.

38. On July 22, 2004, Dr. Rochling received a letter from the VA with the conclusions of the review panel regarding Dr. Rochling's treatment of the patient. Despite Dr. Rochling's provision of evidence to the contrary, it stated the review panel's conclusion that, "[t]his patient received substandard care and identified the attending Gastroenterologist at the Little Rock Veterans Administration Medical Center ("VAMC"), Fedja A. Rochling, M.D. Bch, as the responsible practitioner." A copy of this letter is attached as Exhibit "C."

39. On July 30 and August 6, 2004, counsel for Dr. Rochling sent correspondence to the VA which requested that the VA reconsider its position and indicated that the absence from the panel of a practitioner of the same profession or occupation may likely have led to the determination to report Dr. Rochling. That correspondence also indicated Dr. Rochling's willingness to obtain, and provide to the VA, an opinion from one or more consultants to ensure that a correct determination was made.

40. On August 11, 2004, the VA sent corresponce to counsel for Dr. Rochling indicating that the VA's Director of Medical Legal Affairs was willing to ask the panel to re-review Dr. Rochling's case to determine the possible need for further review by a "medical sub-specialist."

41. On September 15, 2004, counsel for Dr. Rochling provided the VA a report from an independent Board Certified Gastroenterologist who opined that Dr. Rochling had met the standard of care for the treatment of the patient. On October 6, 2004, counsel for Dr. Rochling provided the VA a report from another independent Board Certified Gastroenterologist who also opined that Dr. Rochling had met the standard of care for the treatment of the patient.

## The VA's NPDB Report

42. Despite the additional evidence regarding Dr. Rochling's appropriate care of the patient, which was provided to the VA in the fall of 2004, on May 8, 2006, the VA submitted a report to the NPDB indicating that a single settlement payment had been made for the benefit of Dr. Rochling. The NPDB report indicated that Dr. Rochling was responsible for the death of the patient.

43. 38 C.F.R. § 46.3 requires the VA to include in its NPDB reports "[a] description of the acts or omissions and injuries or illnesses upon which the action or claim was based."

44. The VA report to the NPDB states that the VA's settlement, allegedly for the benefit of Dr. Rochling, was a settlement of the claim. However, the claim included an allegation that the standard of care was not met when the surgeon failed to remove the surgical clips from the patient's common bile duct. Dr. Rochling was not the surgeon.

45. On August 17, 2006, Dr. Rochling, submitted an administrative dispute to the Assistant General Counsel for the VA, specifically requesting that the report made to the data bank be withdrawn and voided because:

    (a)    the settlement payment was not "for the benefit of" Dr. Rochling;

    (b)    the report was arbitrary;  and

    (c)    Dr. Rochling was not afforded his due process rights.

46.     On September 18, 2006, Dr. Rochling received the VA's response to his administrative dispute requesting that the VA void its report to the NPDB. The VA responded that:

> The panel reviews the medical records and the statement of the physician as well as reports of any boards of investigation. Its decision is final. The panel determined that Dr. Rochling should be reported in this case. The decision was not arbitrary but resulted from a review of the above information . . .. As we mentioned in our earlier response to your April 10, 2006 letter, the malpractice payment review panel followed the appropriate procedures in reaching its decision.

### Dr. Rochling's Request for Secretarial Review of the NPDB Report

47.     On December 7, 2006, Dr. Rochling requested Secretarial Review on the grounds that: 1.) it was a factual impossibility that the settlement payment was "for the benefit of" Dr. Rochling; 2.) the report was arbitrary; 3.) and Dr. Rochling was not afforded his due process rights.

48.     On April, 14, 2008, Dr. Rochling received confirmation of his request for Secretarial Review, and indicating the scope of the review. The letter provides:

> The Secretary cannot determine whether a reporter's decision to take an action concerning licensure, privileges, exclusion, etc., was correct or fair. The Secretary can only determine: (1) if the report is legally required or permitted to be filed; and (2) if the report accurately depicts the action taken and the reporter's basis for the action as reflected in the written records. Similarly, for malpractice payment reports the Secretary can only determine if the report accurately depicts a payment made on your behalf and the claimant's allegations, not whether malpractice was actually committed or the payment was justified.

49.     On March 1, 2010, the Department of Health and Human Services sent a letter to Dr. Rochling stating that:

> There is no basis on which to conclude that the report should not have been filed in the NPDB or that it is not accurate. Your request that the report be voided from the NPDB is hereby denied. The report will remain in the NPDB. In making this finding, the Secretary is explicitly not making any finding concerning the merits of the allegations against you which served as the basis for the DVA's action or the adequacy of the due

10

process provided to you by the DVA . . ..  The DVA can choose to report or not report a physician according to its own rules.  We cannot overturn the DVA's decision.  Our office is unable to void the report or remove your name.  Only the DVA can do that.

50.    The March 1, 2010, Secretarial review further provided that "under the dispute resolution process only whether the payment made is required to be reported and whether the contents of the report accurately describe the reporter's payment and the reasons for the payment as stated in the reporter's decision document may be challenged."  A copy of this letter is attached as Exhibit "D."

### Effect of NPDB Report on Dr. Rochling

51.    As a result of the VA's actions, Dr. Rochling was required to disclose the report to the state boards of Nebraska and Wisconsin.

52.    As a result of the Defendants actions, Dr. Rochling will also be required to disclose and defend the VA's report to the NPDB each time he applies or re-applies for privileges at a medical facility, employment, state medical licenses or insurance.

53.    Prior to the VA's NPDB report, Dr. Rochling had never been reported to the National Practitioner Data Bank.

54.    The continued existence of the VA's NPDB report results in exponential harm to Dr. Rochling because any denial of employment, privileges or licensure will result in additional reports to the NPDB and further damage to Dr. Rochling.

### FIRST CAUSE OF ACTION:
### UNLAWFUL VA REGULATION UNDER THE ADMINISTRATIVE PROCEDURE ACT

55.    Paragraphs 1 through 54 are incorporated as though set forth fully herein.

56.    The VA's promulgation and enforcement of VHA Handbook section 1100.17, prior to issuance of VHA Directive 2004-024, was arbitrary, capricious, an abuse of discretion and not otherwise in accordance with law.

57. The failure of the VA to include due process protections in its VHA Handbook, prior to issuance of VHA Directive 2004-024, for providers who were retroactively identified as the beneficiary of a VA malpractice settlement and payment and reported to the NPDB was a clearly erroneous interpretation of HCQIA in the following particulars:

a.) 42 U.S.C.A. § 11112(3), requires that reasonable notice and opportunity to be heard prior to a professional review action, but the VHA handbook did not require notice, and opportunity to be heard, or even a professional review until after the a malpractice settlement had been made and the reporting requirement of HCQIA triggered. Providing a professional review action after the event triggering the duty to report under HCQIA is contrary to the clear intent of HCQIA that due process is provided before the reportable action.

b. 42 U.S.C.A. § 11112 (4), requires that action be taken only after reasonable efforts to obtain the facts from the involved physicians. Notifying and obtaining facts from the involved physicians only after the settlement triggering the reporting requirement of HCQIA is clearly erroneous.

58. The VA's promulgation and enforcement of its regulation allowing the VA the discretion on whether or not to report a physician to the NPDB, after the VA has made a malpractice settlement, by retroactively determining on whose behalf the payment was made, erroneously treats the NPDB mandatory reporting requirement intended by Congress as discretionary or forces the VA to assign blame to someone even if the facts do not support any finding of substandard care or incompetence.

## SECOND CAUSE OF ACTION: UNLAWFUL ACTION BY VA AGAINST DR. ROCHLING UNDER THE ADMINISTRATIVE PROCEDURE ACT

59. Paragraphs 1 through 58 are incorporated as though set forth fully herein.

60. The VA abused its discretion, acted arbitrarily, capriciously, and without observance of due process when it failed to provide notice to Dr. Rochling of the malpractice claim prior to the VA's payment and settlement of the claim, which was the reportable action.

61. The VA abused its discretion and acted arbitrarily, capriciously, and without observance of procedure required by the VA's own Handbook, when it failed to convene an unbiased peer review panel that <u>included</u> a member of Dr. Rochling's occupation.

62. The VA's reporting of Dr. Rochling to the National Practitioner Data Bank, was clearly erroneous under the Administrative Procedure Act in that it was not supported by substantial evidence and was contrary to the independent evidence submitted to the review panel.

63. The VA abused its discretion and acted arbitrarily, capriciously, and without observance of procedure required by HCQIA, when it paid a malpractice settlement, which was allegedly on behalf of Dr. Rochling without providing Dr. Rochling his constitutional right to due notice and an opportunity to be heard.

64. The post hoc determination by the VA that Dr. Rochling had benefited from the VA's settlement payment to the patient, was arbitrary, capricious, and an abuse of discretion because the VA had no duty to report Dr. Rochling under 42 U.S.C.A. §11131. The VA only had a duty under HCQIA to report physicians for whose benefit the VA had made a settlement, and at the time the VA made the settlement, it had not determined that the settlement was on behalf of Dr. Rochling or even warranted at all for other than "business reasons."

### THIRD CAUSE OF ACTION: THE VA'S VIOLATION OF DR. ROCHLING'S RIGHT TO SUBSTANTIVE DUE PROCESS

65. Paragraphs 1 through 64 are incorporated as though set forth fully herein.

13

66. Dr. Rochling has a liberty interest in practicing his chosen profession; medical doctor, unencumbered by the serious stigma of an official report indicating that the VA believes a patient died because of Dr. Rochling's acts or omissions.

67. Dr. Rochling has a property interest in his unrestricted license to practice medicine.

68. The VA deprived Dr. Rochling and similarly situated VA providers under its regulatory scheme by allowing settlement of a claim on behalf of the VA and then retroactive determination of parties for whom the settlement will be considered to have been made.

69. The VA's retroactive determination that the VA's settlement payment had been made on behalf of Dr. Rochling deprived and continues to deprive Dr. Rochling of his liberty and property rights, without the due process of law to which he is entitled under U.S.C.A. Const. Amend 5.

70. The VA's practice, up until its issuance of VHA Directive 2004-024, of settling and paying a malpractice claim that will require reporting to the NPDB, before determining if there was actual substandard or incompetent care provided by any individual providers and without providing notice and an opportunity to be heard to the providers is irrational and shocks the conscience.

71. The VA's practice, up until its issuance of VHA Directive 2004-024, of settling a malpractice claim without investigation and determination of the strength of the claim against it, was irrational. Dr. Rochling, or similarly situated physicians could have presented information rebutting the validity of the claim, either negating the need for settlement of an invalid malpractice claim, reducing the settlement amount or by correctly identifying the physician whose acts or omissions caused an undesirable outcome.

14

72. In the alternative, up until the issuance of VHA Directive 2004-024, the VA was presumably investigating and determining fault prior to settlement without providing Dr. Rochling, or similarly situated physicians, notice and an ability to present information rebutting the validity of the claim. If this is the case, then the VA was disregarding its own regulation by determining for whose benefit a malpractice settlement payment had been made before the payment was made and before notice was provided to individuals which the VA determined provided substandard or incompetent care.

73. Alternatively, the VA was making determinations to settle claims for "business reasons" associated with the time and expense involved in defending claims rather than for actual substandard care or incompetence and then assigning the "finding" of substandard care or incompetence where there was none in order to comply with the requirement to report to the NPDB.

74. By only allowing providers to rebut the malpractice claim and determining fault after the malpractice claim has been settled, the VA: 1.) created a presumption of fault and incentive for the VA peer review committees to allocate fault to a physician; and 2.) encouraged physicians to point fingers at one another to protect their license rather than disputing the veracity of the claim itself.

75. The VA's pre-VHA Directive 2004-024 practice only giving providers notice and an opportunity to rebut the malpractice claim and determining fault only after a settlement payment had been made, bears no rational relationship to a stated VA objective.

### FOURTH CAUSE OF ACTION: THE VA'S VIOLATION OF DR. ROCHLING'S RIGHT TO PROCEDURAL DUE PROCESS

76. Paragraphs 1 through 75 are incorporated as though set forth fully herein.

77. Dr. Rochling has a liberty interest in practicing his chosen profession; medical doctor, unencumbered by the serious stigma of an official report indicating that the VA believes a patient died because of Dr. Rochling's acts or omissions.

78. Dr. Rochling has a property interest in his unrestricted license to practice medicine.

79. The VA deprived Dr. Rochling of his liberty and/or property interests when the VA made a malpractice settlement payment, allegedly on Dr. Rochling's behalf, without due process of law.

80. The VA denied Dr. Rochling his right to due process of law when the VA settled a malpractice claim against the VA, allegedly on Dr. Rochling's behalf, without providing Dr. Rochling prior notice and an opportunity to contest the claim.

81. The VA denied Dr. Rochling his right to due process of law when it disregarded the time frames for notice and decision making set forth in the MOU and the VA's own Handbook with impunity.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Rochling respectfully requests that this Court:

(a) Declare, adjudge and decree that the VA's report of Dr. Rochling to the NPDB be voided, rescinded and permanently removed from the NPDB.

(b) Declare, adjudge and decree that the NPDB must remove Dr. Rochling from the data base.

(c) Set aside or remand Dr. Rochling's claims to the VA, requiring that the VA void, rescind and permanently remove its report to the NPDB.

(d) Award reasonable attorneys fees and costs because the VA's actions were without merit.

(e) Award such other relief as the Court deems just and equitable.

DATED this 16th day of August, 2010.

                                          FEDJA ROCHLING, M.D., Plaintiff,

BY: /s/Brian J. Brislen
Brian J. Brislen #22226
Elizabeth A. Simpson #22966
LAMSON, DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, Nebraska 68114
(402) 397-7300
bbrislen@ldmlaw.com
esimpson@ldmlaw.com

464932

17