# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FEDJA ROCHLING, M.D., | ) | Case No 8:10-CV-00302 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DEPARTMENT OF VETERANS | ) | |
| AFFAIRS, ERIC K. SHINSEKI, in his | ) | |
| official capacity as the Secretary for the | ) | |
| Department of Veterans Affairs, the | ) | |
| DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES and KATHLEEN | ) | |
| SEBELIUS, in her official capacity as the | ) | |
| Secretary for the Department of Health | ) | |
| and Human Services, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Brian J. Brislen (#22226)
Elizabeth A. Simpson (#22966)
Lamson Dugan and Murray, LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Telephone: (402) 397-7300
Fax: (402) 397-7824
bbrislen@ldmlaw.com
esimpson@ldmlaw.com

## INTRODUCTION

Plaintiff Fedja Rochling, M.D. ("Dr. Rochling") submits this brief in support of his motion to supplement the administrative record filed by the Government. Dr. Rochling is entitled to de novo review of the VA's decision that its settlement was for the benefit of Dr. Rochling based upon the inadequate fact-finding procedures used by the VA in its informal adjudicatory proceeding. As a result, Dr. Rochling requests that he be allowed to depose the appropriate decision makers at the VA and conduct limited discovery to supplement the Veterans Administration's ("VA") record. For the review of the actions by the Secretary of the Department of Health and Human Services ("DHHS") and to the extent this Court were to find that Dr. Rochling were not entitled to de novo review of the VA's actions, Dr. Rochling submits that, at a minimum, the record should be expanded to include: 1.) all relevant correspondence exchanged between Dr. Rochling individually or through counsel and the VA; 2) the VA's documentation that articulates the findings upon which the VA's decision to settle the claim against it and determination that the settlement was for the sole benefit of Dr. Rochling; 3) documentation that permits the Court to determine whether the VA or DHHS followed their own policies and procedures in making their determinations.

On February 2, 2010, Defendants filed what it indicates the complete administrative record in this matter (Filing Nos.24, 26, 27, 28, 29, 30). The VA, however, submitted only a few pieces of correspondence. Dr. Rochling, on the other hand, has relevant correspondence that is missing from the VA's record. (Filing Nos.26, 27, 28, 29, 30). Therefore, Dr. Rochling submits that there can be no presumption that the record is complete. Also, with a comparison of the record submitted to the documentation the VA is required to create under regulation and internal policy, there is still more documentation missing.

2

The record submitted by the VA not only fails to provide the findings upon which it based its decisions, but it fails to indicate who was appointed to its review panel, how it allegedly complied with its own procedures, or even a include a copy of the claim upon which the VA's action was allegedly based.

Even under a narrow scope of review, a full administrative record would allow this Court to determine if the agencies made appropriate decisions based upon statute, regulation and internal policies and the record before the agency at the time the decision was made. While Dr. Rochling is entitled to a de novo review, the blatant insufficiency of the present record under a narrow standard demonstrates the need for discovery.

## STATEMENT OF FACTS

1. On February 2, 2010, the Government filed its version of the Administrative Record. (Filing Nos. 24, 26,27,28,29,30).

2. The VA's version of the Administrative Record omits relevant documents known to exist and that Dr. Rochling asserts are critical to a judicial review of the administrative decision-making of the VA. These documents, which are attached to the Declaration of Elizabeth A. Simpson as Exhibit A can be summarized as follows:

    a. A January 9, 2004 Memorandum from the Department of Veterans Affairs Medical Center Director, George Gray, to Dr. Rochling on the subject of the Peer Review Panel for Malpractice Payment. This memo simultaneously informed Dr. Rochling that a claim had been made and that the VA had made a malpractice payment.

    b. A July 22, 2004 letter to Dr. Rochling from Nicholas Lang, Chief of Staff of the Central Arkansas Veterans Healthcare System, enclosing the conclusion of the review panel dated July 15, 2004.

    c. The conclusion letter of the review panel dated July 15, 2004, that indicated a three-member panel convened on July 9, 2004, to review the tort claim and that the committee determined that Dr. Rochling was required to be reported to the NPDB.

3

d. A July 30, 2004 letter to Dr. Lang and George Gray from Mr. Lamson, attorney for Dr. Rochling.

e. An August 6, 2004, letter from Mr. Lamson, attorney for Dr. Rochling, to Dr. Lang and Dr. Gray of VA following up after receiving no response to his July 30, 2004, letter.

f. An August 11, 2004, letter from George Gray, Medical Center Director, to Mr. Lamson, attorney for Dr. Rochling, regarding Dr. Rochling's request to have a panel with the appropriate specialist meet in accordance with VHA Handbook 1100.17. Appendix C2 § 10.

g. An August 31, 2004, response by Mr. Lamson to Mr. Gray thanking him for opportunity to have panel re-review the decision against Dr. Rochling.

h. A copy of a February 22, 2006, letter from Dr. Grippi to Senator Chuck Hagel and fax cover page dated February 27, 2006, when the copy was provided to Mr. Lamson, attorney for Dr. Rochling.

i. An April 10, 2006, letter to Dr. Grippi from Mr. Lamson, attorney for Dr. Rochling, discussing an undated letter from Dr. Grippi to Senator Hagel in response to Senator Hagel's inquiry regarding Dr. Rochling's case.

j. A letter dated May 9, 2006, from E. Douglas Bradshaw, Jr. Assistant General Counsel implicitly stating that Dr. Rochling would be reported.

k. An August 17, 2006, letter from Mr. Brislen, attorney for Dr. Rochling, to E. Douglas Bradshaw disputing the NPDB report and requesting it be voided.

l. A September 18, 2006, letter from E. Douglas Bradshaw to Mr. Brislen, attorney for Dr. Rochling, denying Dr. Rochling's request to void the NPDB report.

Additional documents, that Dr. Rochling contends are omitted from the record, but are not in Dr. Rochling's possession and can only be produced by the VA are:

a. The settlement agreement which was allegedly made for the benefit of Dr. Rochling;

b. Correspondence, documentation and other evidence of the claims, demands and considerations that went into the settlement that was allegedly on behalf of Dr. Rochling;

c. the reports of any boards of investigation related to the care of the decedent, which are presently excluded from the record;

4

    d.  the names and specialties of the individuals appointed to the review panel(s); and

    e.  the findings of the review panel with respect to each practitioner involved in the care of the decedent.

       Dr. Rochling now respectfully submits that discovery should be allowed to complete the "Administrative Record" as filed by the VA and DHHS.

## STANDARD OF REVIEW

       The APA authorizes persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to seek remedy in Court. 5 U.S.C.A. § 702. The APA set forth the scope of judicial review and remedies under 5 U.S.C.A. § 706, which provides as follows:

> To the extent necessary to decision and when presented, the reviewing Court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing Court shall--
>
> **(1)** compel agency action unlawfully withheld or unreasonably delayed; and
>
> **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--
>
> > **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > **(B)** contrary to constitutional right, power, privilege, or immunity;
> >
> > **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > **(D)** without observance of procedure required by law;
> >
> > **(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> >
> > **(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing.

In making the foregoing determinations, the Court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

Under this provision, the APA clearly requires that the "Court shall review the whole record or those parts of it cited by a party." Then, a Court's interpretation of what constitutes the whole record and whether extra-record discovery is permitted is based upon the agency action challenged.

In *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,413-414, 91 S. Ct. 814 (1971), the United States Supreme Court offered guidance on when to apply the various standards of 5 U.S.C.A. § 706(2). The Court directed that subsections A-D always apply, but that subsections E and F should only apply in limited situations. *Bar Bea Truck Leasing Co. v. United States*, 4 C.I.T. 159, 161 (Ct. Int'l Trade 1982)(Citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,413-414, 91 S. Ct. 814 (1971)).

Section E has no application to this matter. Section F, however, does apply. Under section F a de novo review is provided when: (1)"the action is adjudicatory in nature and the agency fact finding procedures are inadequate," and (2) " issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Id.*

Because the VA conducted an informal adjudication when it settled a claim and determined that the settlement had been for the benefit of Dr. Rochling, Section F applies, and de novo review is provided. Because the Secretarial Review by DHHS does not fall within Section F, substantial inquiry rather than de novo review of its action is provided. See *Overton*, 401 U.S. 402, 413-414. The actions of DHHS, however, rely on the propriety of the actions of the VA.

## ARGUMENT

**I.    THE VA'S DETERMINATION THAT IT SETTLED A MEDICAL MALPRACTICE CLAIM AGAINST IT FOR THE BENEFIT OF DR. ROCHLING MUST BE REVIEWED DE NOVO; THEREFORE, THE RECORD SHOULD BE EXPANDED.**

Dr. Rochling is entitled to de novo review of the VA's determination that it settled a medical malpractice claim for his benefit because the determination "is adjudicatory in nature and the agency fact finding procedures [were] inadequate," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-414, 91 S. Ct. 814 (1971). That being so, the de novo review must be thorough and an expanded record is warranted.

**A.    The VA's Determination Was Adjudicatory in Nature**

"Adjudication is a process by which an agency applies either law or policy, or both, to the facts of a particular case to determine past and present rights and liabilities" AMJUR ADMINLAW § 268 (internal citations omitted). "An adjudicative decision attaches legal or other consequences to individualized past conduct." *Id.*

In this instance, because the VA applied its own policies and regulations (albeit incompletely) to the facts of a particular claim and settlement of that malpractice claim to determine whether a physician had provided "substandard care," or demonstrative "professional incompetence," or "professional misconduct" and would face the consequences, the VA's decisions to settle the claim against it and the subsequent decision that the claim had been settled for the benefit of Dr. Rochling were adjudicatory in nature. Thus, de novo review is warranted under the first test articulated in *Overton Park*.

In *National Organization for Women, Washington, D.C. Chapter v. Social Sec. Admin.*, 736 F.2d 727 (D.C. Cir. 1984), the Court determined that proceedings, which culminated in an agency decision to release company-submitted data regarding its affirmative action plans, were

7

adjudicatory in character under 5 U.S.C.A. ¶ 706(2)(F) and the District Court had not erred in conducting a de novo review. The administrative proceedings had consisted of obtaining written statements from the company seeking to have its information withheld from disclosure under the Freedom of Information Act and the organization seeking disclosure of the information. *Id.* at 730. In holding that the proceedings were adjudicative, the Court provided the following rationale:

> The distinction between adjudicative and legislative facts is now well recognized:

> Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but the general facts which help the tribunal decide questions of law and policy and discretion.

> * * *

> Facts pertaining to the parties and their businesses and activities, that is, adjudicative facts, are intrinsically the kind of facts that ordinarily ought not to be determined without giving the parties a chance to know and to meet any evidence that may be unfavorable to them, that is, without providing the parties an opportunity for trial. The reason is that the parties know more about the facts concerning themselves and their activities than anyone else is likely to know, and the parties are therefore in an especially good position to rebut or explain evidence that bears upon adjudicative facts. Because the parties may often have little or nothing to contribute to the development of legislative facts, the method of trial often is not required for the determination of disputed issues about legislative facts. *Id.* at 738 fn 95

Here, the VA reviewed adjudicative facts to determine whether and how to settle the malpractice claim against it. It further determined whether Dr. Rochling, or any of the decedent's other providers, provided "substandard care." Finally, it made the adjudicatory determination that the settlement was "related to" that care. But, like the company in *N.O.W.*, Dr. Rochling was not provided a chance to respond to all of the evidence the VA had collected that was unfavorable to him.

For example, Dr. Rochling was unable to view or respond to statements made by other physicians treating the decedent, which were revealed to him for the first time when the VA submitted its administrative record. These statements provide material information that apparently was used by the VA decision-makers to find that the payment was made on behalf of Dr. Rochling. A statement submitted by Dr. X[1] from the transferring facility makes the argument that he was not responsible for the patient's death because he transferred the patient to the Little Rock VAMC specifically for an ERCP procedure and that a GI physician in Little Rock agreed over the phone that he would accept the transfer of the decedent and perform an ERCP procedure. This allegation was not contained in any of the materials available to Dr. Rochling and he was unable to address the allegation that was apparently relied upon by the VA.

**B.**      **The VA's Fact Finding Procedures Were Inadequate.**

In *National Organization for Women, Washington, D.C. Chapter v. Social Sec. Admin.*, 736 F.2d 727 (D.C. Cir. 1984) the Court found fact finding procedures inadequate in that they only afforded ten days for the agency to review and appeal an action, because the parties were thereby deprived of the opportunity to review the "evidence used to prove the Government's case...so that he has an opportunity to show that it is untrue." *Id.* at 739. (citing *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377, 1390-1391 (1959). See also *Gonzales v. United States,* 348 U.S. 407, 413-414, 75 S.Ct. 409, 412-413, 99 L.Ed. 467, 472 (1955) (petitioner entitled to know thrust of agency's recommendations so he can muster facts and arguments to meet them); *Simmons v. United States,* 348 U.S. 397, 405, 75 S.Ct. 397, 401-402, 99 L.Ed. 453, 459 (1955) (notice of adverse charges essential to basic fairness); *Moore-McCormack Lines v. United States,* 413 F.2d 568, 584-585, 188 Ct.Cl. 644 (1969) (procedural

---

[1] The actual names of the other physicians involved are not used in this brief. They will be differentiated with assigned letters, such as "X" or "Y."

fairness requires that individuals be informed of agency position and have opportunity to respond)).

Here, the VA's procedures were also inadequate under the APA in that they: 1) found that the settlement had been for the benefit of Dr. Rochling while disregarding the actual reasons for the settlement[2]; 2) attributed a settlement to Dr. Rochling even though he was unable to provide any response or rebuttal to the claim until almost a year after it was settled[3]; 3) failed to disclose statements received from other physicians that could have been rebutted by Dr. Rochling had he been made aware of them; and 4) failed to require that the review panel include an expert of the appropriate specialty, who was qualified to opine regarding the standard of care[4]. Thus, de novo review of this matter is warranted and the factual record should be expanded accordingly.

While the VA may argue that Dr. Rochling's argument that procedures were inadequate is no longer viable since his Constitutional Due Process Claims have been dismissed, quite the opposite is true. Where the APA may statutorily protect Dr. Rochling from the lack of proper notice and fact finding procedures, due process need not be invoked. *National Organization for Women, Washington, D.C. Chapter v. Social Sec. Admin.*, 736 F.2d 727 (D.C. Cir. 1984) Citing, *e.g., Wolston v. Reader's Digest Ass'n,* 443 U.S. 157, 160-161 n. 2, 99 S.Ct. 2701, 2704 n. 2, 61 L.Ed.2d 450, 456 n. 2 (1979) (dispositive issues of statutory law are to be treated before constitutional issues); *Bowen v. United States,* 422 U.S. 916, 920, 95 S.Ct. 2569, 2573, 45 L.Ed.2d 641, 647 (1975) (federal Courts will not decide constitutional questions unnecessarily).

---

[2] The record provides no documentation that was used by the VA to determine whether and on what terms it should settle the claim against it. There is no settlement agreement, correspondence, or other documentation indicating the facts and findings upon which the settlement was actually made.
[3] In this case, Dr. Rochling was notified of a settlement occurred on March 18, 2003, in correspondence from the VA dated January 9, 2004. However, the VA has failed to submit any documentation for the record indicating the date of settlement. Dr. Rochling has included the January 9, 2004, as an exhibit attached to the Index of Evidence.
[4] Correspondence regarding the need to have a panel of the correct composition, and evidencing that the VA was made aware of this concern prior to its decision to report Dr. Rochling has been attached to the Index of Evidence.

Furthermore, "[w]here no 'hearing' of any type is required by statute, procedural fairness demands that plaintiffs be informed of the [agency's] position on [an] issue and have an opportunity to respond to [the agency's] contentions before the issuance of a final determination on the issue." A true opportunity to respond, requires actual notification of the contentions that require response.

Here, the record submitted by the VA provides no evidence of the VA's contentions or notification to Dr. Rochling that provided him meaningful opportunity to respond. Therefore, the agency's fact-finding procedures were inadequate to informally adjudicate the malpractice claim and Dr. Rochling is entitled to a de novo review and an appropriately expanded record.

## II.   EVEN UNDER A "SUBSTANTIAL INQUIRY" REVIEW, THE RECORD MUST BE SUPPLEMENTED WITH EXTRA-RECORD MATERIALS TO PREVENT THE AGENCIES FROM EVADING JUDICIAL REVIEW OF THE AGENCIES' DECISION-MAKING.

Generally, when not dealing with an adjudicatory action as described above, review of agency action by a federal district Court under the Administrative Procedure Act is limited to the administrative record compiled by the Agency. Even this limitation, however, is subject to judicial exceptions. Once source noted the following exceptions:

> In limited circumstances, district Courts are permitted to admit extra-record evidence: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." These limited exceptions operate to identify and plug holes in the administrative record.

*The Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)(internal citations omitted). The application of exceptions have been explained as follows:

> The first such exception…is de novo review [as permitted by *Overton Park*]. The second exception permits discovery when plaintiffs have made a "strong showing of bad faith or improper behavior." *Overton Park*, 401 U.S. at 420. The third exception provides that examination of decisionmakers may be required when such examination provides the only possibility for effective judicial review and when there have been no

contemporaneous administrative findings." *Community for Creative Non-Violence v. Lujan*, 285 U.S. App. D.C. 233, 908 F.2d 992, 997 (D.C. Cir. 1990).

*Am. Bankers Ass'n v. NCUA*, 513 F. Supp. 2d 190, 200 (M.D. Pa. 2007).

In the present scenario, not only would de novo review entitle Dr. Rochling to discovery, but the third exception to a closed record is also grounds for permitting discovery. The record must be supplemented to explain the technical medical records, since the record submitted by the VA provides no contemporaneous administrative findings by appropriate clinicians. Perhaps there were no such findings made. In that case, however, Dr. Rochling should be entitled to discover that fact.

It is well settled that the opinion of an appropriate clinical expert is necessary to determine whether a physician failed to meet the standard of care. *Kortus v. Jensen*, 195 Neb. 261, 268, 237 N.W.2d 845, 850 (1976); *Vilcinskas v. Johnson,* 252 Neb. 292, 562 N.W.2d 57 (1997); *Boyd v. Chakraborty,* 250 Neb. 575, 550 N.W.2d 44 (1996). Therefore, merely providing the medical records to the Court for review without any explanation, provides insufficient evidence upon which the Court may review the agency's action and the record must be supplemented with additional documents and depositions of the VA decision-makers.

**III.   EVEN UNDER A "SUBSTANTIAL INQUIRY" REVIEW, THE RECORD SUBMITTED IS PRESENTLY INCOMPLETE AND MUST BE SUPPLEMENTED TO ENABLE THIS COURT TO REVIEW THE *FULL* ADMINISTRATIVE RECORD.**

In examining the record, the Court asks whether the agency "'articulate[d] a rational connection between the facts found and the choice made.' " *Id.* (quoting *South Dakota v. Ubbelohde,* 330 F.3d 1014, 1031 (8th Cir.2003); *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 288, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)); *see also Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 48, 103 S.Ct.

2856, 77 L.Ed.2d 443 (1983)(stating that "an agency must cogently explain why it has exercised

its discretion in a given manner").   The agency must base its determination "upon factors listed

in the appropriate regulations" and must use a "reasonable interpretation of the regulation and the

statute" in reaching its conclusion. *Id.* (quoting *Harrod v. Glickman*, 206 F.3d 783, 788 (8th Cir.

2000). Therefore, a complete administrative record must consist of "all documents and materials

directly or indirectly considered by agency decision-makers and includes evidence contrary to

the agency's position." *Exxon Corp. v. Dept. of Energy*, 91 F.R.D. 26 (D.C. Tex. 1981) (*citing

Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951));

*Tenneco Oil Co. v. Dept. of Energy,* 475 F.Supp. 299, 317 (D.Del.1979).

The Supreme Court has held that, "having the 'whole record' before it is crucial to the

Court's review under the APA" because:

> …the Court cannot determine whether the final agency decision reflects the rational
> outcome of the agency's consideration of all relevant factors when the Court has no idea
> what factors or data were in fact considered by the agency. In assessing whether the
> agency's action was arbitrary and capricious, the Court must test the action against the
> "full administrative record that was before the (agency official) at the time he made the
> decision." *Miami Nation of Indians of Indiana v. Babbitt*, 979 F.Supp. 771 (N.D.Ind.
> 1996) (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 84
> L.Ed.2d 643 (1985). (internal citations omitted).

The Eighth Circuit has interpreted sections 706(2)(A)-(D) of the APA to require that a

Court make a "searching inquiry into the facts, examining the full administrative record."*Costa

v. Leavitt*, 442 F.Supp.2d 754, 758 (D.Neb. 2006).

In this case, the government has submitted a record that: 1) presents no documentation of

the VA's decision to settle the claim against it or findings in support its post hoc determination

that the settlement had been on behalf of Dr. Rochling; 2) fails to indicate the basic information

of when the VA made its determinations and who made its determinations; and 3) fails to

13

provide information necessary for this Court to determine whether the VA or DHHS complied with their own policies.

**A.**    <u>The VA's Administrative Record Submitted is Incomplete in that it Provides No Explanation for the VA's Actions.</u>

"To perform an 'effective' APA review, 'the Court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process.'" *Chenega Management, LLC v. U.S.*, --- Fed.Cl. ----, 2010 WL 3632960 (Fed. Cl. 2010)(*quoting Pitney Bowes Gov't Solutions, Inc. v. United States*, 93 Fed. Cl. 327, 332 (2010)).

While the VA will not want to divulge its "mental processes," the VA must still provide this Court documentation which articulates its findings so that the Court is able to determine if the VA's action was arbitrary and capricious or an abuse of discretion.

Under the APA, it is the agency's own reasoning, and not post hoc rationalizations by counsel, that must survive review. *See, e.g., SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *see also Gatewood v. Outlaw*, 560 F.3d 843, 846 (8th Cir. 2009) ("The Courts may not accept . . . counsel's post hoc rationalizations for agency action.") (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). An agency's "decision must stand or fall on the propriety of the reasons given" by the agency in the administrative proceedings. *Nesseim v. Mail Handlers Ben. Plan*, 995 F.2d 804, 807 (8th Cir. 1993).

Here, the VA has presented no documentation where it articulates the findings upon which it based its decisions. The VA may claim that there is a presumption of regularity in the submitted record. However, any presumption of regularity falls by the wayside when it is

14

demonstrated that the record submitted excludes information the agency is required, by its own regulations and procedures, to review. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 740, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)(stating that the Court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary and when a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question.)

The VA may also attempt to remedy the insufficiency of the record it has submitted for review by including only those documents that advance its position. However, the law requires that a full administrative record consists of "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Exxon Corp. v. Dept. of Energy,* 91 F.R.D. 26 (D.C. Tex. 1981). Therefore, the VA must be compelled to disclose for this Court's review all documentation articulating its decisions to settle the claim against it, that the settlement was for the benefit of Dr. Rochling, and that it had followed the correct procedures in making its determinations.

The Veterans Administration must provide the documents and materials considered by each of the decision-makers as defined by VA policies and procedure. First, the VA has provided no documentation indicating the findings of review panel(s). Next, the VA has provided none of the documentation in front of the Director, Medical-Legal Affairs, who conducts the review panel(s). In addition, the VA has provided none of the documentation provided to the facility Director or Chief Patient Care Services Officer, who ultimately make the decision to proceed with the NPDB report by signing the submissions to the NPDB.

By providing only voluminous and duplicative copies of medical records of the decedent, and the self-interested statements of two physicians is insufficient. Without supplementing the

15

VA's present record, the Court is simply left with insufficient evidence with which to review the

actions of the VA.

### 1.   It May Be Demonstrated There is Additional Documentation That Was Before the VA Review Panel That Is Necessary to Create a Full Administrative Record.

The regulations that govern reporting to the NPDB by the Department of Veterans

Affairs are contained in 38 CFR 46.  38 CFR 46.3 (b) provides that:

> Payment will be considered to have been made for the benefit of a physician…only if (at least a majority of) a malpractice payment review panel concludes that payment was related to substandard care, professional incompetence, or professional misconduct on the part of the physician…

In making its determination, the review panel shall:

> …at a minimum, [base their conclusions] on review of documents pertinent to the care that led to the claim. These documents include the medical records of the patient whose care led to the claim, any report of an administrative investigation board appointed to investigate the care, and the opinion of any consultant which the panel may request in its discretion. These documents do not include those generated primarily for consideration or litigation of the claim of malpractice. In addition, to the extent practicable, the documents shall include written statements of the individual(s) involved in the care which led to the claim.

The records submitted appear to only address, in part, what the review panel would have

reviewed.  The records submitted do contain the medical records of the patient, the opinion of the

two physicians consulting on behalf of Dr. Rochling, and the written statements of three

physicians.  However, there is no report of an administrative investigation board, and there are

several providers who provided significant care, as indicated in the medical records, for whom

no statements are enclosed.

Also highly "pertinent to the care that led to the claim" is a copy of the medical claim

itself.  The VA record does not even contain a copy of the claim upon which the VA determined

Dr. Rochling should be reported to the NPDB.  It is shocking to think that a record could be

complete and a decision regarding responsibility for a claim could be made without review of the claim itself.

Furthermore, if we were to assume that the full administrative record was only those minimum documents that the committee was *required* to review, then we would be setting the standard to ignore all documents that were *actually* reviewed. The law requires that a full administrative record consist of "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Exxon Corp. v. Dept. of Energy*, 91 F.R.D. 26 (D.C. Tex. 1981). In this case, we know that additional documents were actually generated; therefore, those documents must be produced.

For additional guidance, the VA also has VHA Handbook §1100.17, which provides "the required procedures for health care facilities on reporting information to the National Practitioner Data Bank (NPDB)." *Id.* at 1. This handbook provides a virtual checklist of the documentation that must be produced and which is absent from the record provided.

The VHA Handbook §1100.17, requires that "for each episode of care, and for each of the involved practitioners, the review panel must...address each of the episodes of care for which payment was made, and specifically state for each of the involved practitioners whether there was substandard care, professional incompetence or professional misconduct." There is no documentation in the record listing each of the practitioners involved in the care of the decedent and whether they provided substandard care.

Without a copy of the claim settled by the VA, allegedly on Dr. Rochling's behalf, a copy of the report of any administrative investigation board, (or a statement that no board was convened and statements or a listing of each of the physicians involved in the care of the decedent, the record is incomplete.

17

2.    **There Was Additional Documentation Before the VA Director of Medical-Legal Affairs as Member and Coordinator of the Panel, This is Necessary to Create a Full Administrative Record.**

With regard to the responsibilities of the Director of Medical-Legal Affairs, 38 CFR 46.3 provides that the Director, Medical-Legal Affairs, shall appoint a panel of a minimum of three individuals.  In addition, the VHA Handbook provision governing malpractice payment reporting, §1100.17 provides that the Director, Office of Medical-Legal Affairs, is responsible for: 1) notification to the facility Director where the episode of care for which a payment has been made occurred; 2) requesting documentation pertinent to the episode of care under review; 3) the selection and appointment of the members of the review panel; and 4) providing "a report to the facility director documenting the conclusion(s) that the panel reached regarding substandard care, professional incompetence, or professional misconduct and the rationale for those conclusion(s)."

The handbook goes on to say that "if the review indicates that additional or other practitioners were involved in the episode of care, the review must cease, and the Director, Medical-Legal Affairs, must request that the facility Director provide such practitioners with written notice." *Id.* at 5.b.(4)(d).  The timing of the responses from the practitioners who provided statements are staggered such that it appears the review panel met twice before requesting a statement from Dr. Rochling.  Yet there is no documentation of that committee having met, what was considered, or the determinations made and the reasons therefore.

In §1100.17 section 4, entitled "Responsibility," the handbook provides that the Regional Counsel must provide malpractice payment information to the facility and to the Office of the Director, Medical Legal Affairs.  There is no documentation reflecting the provision of malpractice payment information to the Director, Medical Legal Affairs, or distribution of that

18

payment information to the review panel at any time prior to Dr. Rochling being reported to the NPDB.

Appendix B, for VHA Handbook § 1100.17 provides a sample notification letter to the facility from the Director, Medical-Legal Affairs explaining the materials that must be a part of the review process. This letter is required to notify the facilities of the claim and request information, yet no such letter is included for either the Muskogee VAMC or the Little Rock VAMC, where the decedent received the care which was the subject of the claim. The information contained in this letter, and the documentation provided in response to this letter, would have been in front of the Director, Medical-Legal Affairs as a VA decision-maker.

First, the letter in Appendix B requests that each practitioner involved in the episode of care for which payment was made "be informed and invited to provide input for the consideration of the panel." The record does not indicate if each practitioner was invited to provide input.  Statements of only three, out of multiple physicians, were included in the record.

Next, the letter requires that a memo be used to inform each practitioner involved. Again, no memo informing the practitioners was included by the VA and a copy of the memo provided to Dr. Rochling has been attached to the Index of Evidence.  In addition, the Director, Medical-Legal Affairs, requires that the facility notified forward a "list of pertinent providers involved in the allegation and their status at the time." There are no lists of pertinent providers involved in the allegation provided.

If we compare the present facts with *Robinette v. Commissioner of I.R.S.*, 439 F.3d 455, 461 (8th Cir. 2006), we can see just how far below the standard of completeness the record is.  In Robinette, Court found the record to be sufficient for the purpose of determining if the appeals officer abused his discretion when it contained documentation that the appeals officer examined

19

Robinette's file, obtained relevant documents, (including the original compromise and the letters sent by the IRS), a log detailing the dates and times of contact along with brief notes detailing the subjects discussed in the conversations, and a memorandum explaining the officer's recommendations.

Here we have a Director, Medical-Legal Affairs, who coordinated the administrative action. To determine if his or her actions on behalf of the VA were an abuse of discretion, the Court should be able to review the documents produced and used directly or indirectly by him in making and coordinating the decisions of the VA.

This Court must be afforded the opportunity to review the documentation evidencing the findings of the VA decision makers when it determines whether the VA's decisions violated the Administrative Procedure Act. Therefore, expansion of the record and discovery of the foregoing documentation is required.

    **B.**    <u>**The Administrative Record Submitted Fails To Indicate When the VA Made Its Decisions, Therefore, the VA Cannot Attempt to Limit The Record to the Materials Based on What was Before the VA at the Time Its Decisions Were Made.**</u>

The Supreme Court has ruled that judicial review must be based upon the full administrative record which was before the agency at the time of the decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20, 91 S.Ct. 814 (1971); *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980 (1977); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623-24 (D.C. Cir. 1997).

In addition to failing to explain what the agency's decisions were, the record as it currently stands, does not provide any timeline when the agency made its decisions. Therefore, the record cannot be limited in time.

20

For example, Dr. Rochling alleges in his complaint, upon information and belief, that the VA review panel convened on or about July 9, 2004, to review Dr. Rochling's involvement in the care of the decedent. However, the document upon which this information is based is not in the record submitted by the VA. That information is contained in the July 22, 2004, letter to Dr. Rochling from Nicholas Lang, Chief of Staff of the Central Arkansas Veterans Healthcare System and attached in Plaintiff's Index of Evidence.

Additionally, the limited record submitted by the VA, seems to indicate that the VA panel may have convened on occasions prior to July 9, 2004. The VHA handbook §1100.14.5.b(4)(d) provides that "in the event that the professional review indicates that additional or other practitioners were involved in the episode of care, the review must cease, and the Director, Medical-Legal Affairs, must request that the facility Director provide such practitioners with written notice" as provided in Appendix D.

On May 16, 2003, the record shows a statement of Dr. X, the physician who performed the failed ERCP on the decedent. On June 6, 2003, the record shows a statement of Dr. Y, the physician who performed the decedent's surgery in which surgical clips were left on the decedent's bile duct. It is not until January 9, 2004, that Dr. Rochling received any notification of the claim, its settlement, or a request for his written statement. This notification is relevant in that it indicates that the "VA Medical Legal Affairs has reviewed this case and determined that [Dr. Rochling] should be notified of the tort claim payment." The notification also provides that "prior to filing a report with the NPDB, individual(s) being reported will be given the opportunity to review the accuracy of the report and discuss it with the facility director and any other appropriate individuals. This notification of the claim to Dr. Rochling was excluded from the record and is attached to the Index of Evidence.

More importantly, the limited record submitted by the VA fails to provide this Court with information regarding its decision-making after July 9, 2004, (when Dr. Rochling believes the first review panel met, but there is no basis for in the current record).   After July 9, 2004, the correspondence attached to the Index of Evidence illustrate how the VA accepted the expert opinions on behalf of Dr. Rochling and claim to have reviewed them in a second review panel. The VA wishes to take advantage of the presumption that they gave Dr. Rochling fair consideration by including the reports submitted on Dr. Rochling's behalf in the administrative record, but the VA fails to provide evidence that the VA review panel reconvened or that the VA did anything between July 9, 2004 and May 8, 2006, when the VA reported Dr. Rochling to the NPDB.

### C.   The Administrative Records Submitted by the VA are Incomplete in That The VA Fails to Provide The Documentation Evidencing Factors Listed in the Appropriate Statutes, Regulations, Policies, and Procedures.

The regulations that set forth the procedures that must be followed by the Department of Veterans Affairs when it is considering whether to report a physician following a settlement of a malpractice claim are contained in 38 CFR 46.3, which provides in part, that:

> The practitioner(s) whose actions are under review will receive a written notice, hand-delivered or sent to the practitioner's last known address (return receipt requested), from the VA facility director at the time the VA facility director receives the Notice of Payment. That notice from the VA facility director will indicate that VA is considering whether to report the practitioner to the National Practitioner Data Bank because of a specified malpractice payment made, and provide the practitioner the opportunity, within 60 days of receipt, to submit a written statement concerning the care that led to the claim…The panel, at its discretion, may request additional information from the practitioner or the VA facility where the incident occurred. The review panel's notification to the VA facility Director shall include the acts or omissions considered, the reporting conclusion, and the rationale for the conclusion

Even this small section of this regulation provides a checklist of all documentation that must be created and included in the administrative record, and that was omitted from the record

submitted by the VA. The record submitted by the VA contains no notices to practitioners whose actions were under review. The record only contains the statements of three practitioners, while there were several other practitioners involved. For example, there was a Dr. A and Dr. B at the Little Rock VAMC who the medical records indicate were heavily involved in the care of the decedent, or Dr. C, who apparently discussed transfer with Dr. X, but there is no request for a statement or a statement from these persons and so it is unclear whether the panel considered the actions of any other practitioners who did not respond.

Furthermore, VHA Handbook § 1100.17 requires that "for each of the episodes of care, and for each of the involved practitioners, the review panel must: (1) determine whether there was substandard care, professional incompetence or professional misconduct. . .." Such information would be crucial for this Court to determine whether the VA was required to report Dr. Rochling to the NPDB because the VA had settled a malpractice claim for his sole benefit.

Without each of the documents required by the regulations and internal VA policies, this Court is unable to determine if or when the VA conducted the investigation it was required to perform prior to reporting Dr. Rochling to the NPDB and the record is incomplete.

**D.     The Administrative Records Submitted by DHHS are Incomplete in That DHHS Fails to Provide The Documentation Evidencing Factors Listed in the Appropriate Statutes, Regulations, Policies, and Procedures.**

The National Practitioner Data Bank (NPDB) Guidebook produced by the US Department of Health and Human Services, and located at databanks.hrsa.gov, is to "inform the United States health care community about the NPDB and what is required to comply with the requirements established by Title IV of Public Law 99-660, the Health Care Quality Improvement Act of 1986, as amended.

23

Chapter "F," providing policies relating to disputes, provides that if a Secretarial review is related to a Medical Malpractice Payment Report, "pertinent documentation might include a copy of the following: Written claim; Settlement or release document; Court judgment; Written findings of arbitration or other alternative dispute resolution processes." Furthermore, the handbook provides that "[i]f necessary, the Secretary will ask the reporting entity to supply additional information confirming that the report was submitted in accordance with NPDB regulations.

If we presume that DHHS requested that the VA, as the reporting entity, supply additional information to confirm that the VA's report was in accordance with NPDB regulations, then we must presume that DHHS is in the possession of certain relevant documentation, that has not been produced. First, DHHS should provide the written findings of the VA's review panel or other decision maker in determining that the settlement was for the benefit of Dr. Rochling. Again, the findings of the review panel or other decision-makers is crucial to this Court's ability to determine whether the VA was required to report Dr. Rochling to the NPDB because the VA settled a malpractice claim for the benefit of Dr. Rochling.

Also, DHHS should provide the correspondence in which it requested and received the necessary documentation it requested.

## CONCLUSION

Dr. Rochling is entitled to de novo review of the determination by the VA that it settled a medical malpractice claim for his benefit and a substantial inquiry into all other agency determinations. Accordingly, the administrative record should be expanded and additional discovery allowed. At a minimum, the Court is entitled to review 1) all relevant correspondence exchanged between Dr. Rochling individually or through counsel and the VA; 2) the VA's

24

documentation that articulates the findings upon which the VA's decision to settle the claim

against it and determination that the settlement was for the sole benefit of Dr. Rochling; and 3)

documentation that permits the Court to determine whether the VA or DHHS followed their own

policies and procedures in making their determinations.  The requested information is crucial to

determine if the agencies had legal justification for their decisions.

WHEREFORE, plaintiff Fedja Rochling, M.D. respectfully requests this Court issue an

order permitting depositions of the relevant VA decision-makers and requiring completion the

Administrative Record to include the Documents attached to the contemporaneously filed Index

of Evidence and requested herein.

FEDJA ROCHLING, M.D.,

Plaintiff,

By:    /s/ Brian J. Brislen
       Brian J. Brislen (#22226)
       Elizabeth A. Simpson (#22966)
       Lamson Dugan and Murray, LLP
       10306 Regency Parkway Drive
       Omaha, NE 68114
       Telephone: (402) 397-7300
       Fax: (402) 397-7824
       bbrislen@ldmlaw.com
       esimpson@ldmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

DEBORAH R. GILG, #15395
ROBERT L. HOMAN, #18580
Assistant United States Attorneys
District of Nebraska
1620 Dodge Street #1400
Omaha, NE 68102
Tel: (402) 661-3700
Fax: (402) 661-3083
deborah.gilg@usdoj.gov
robert.homan@usdoj.gov

s/Brian J. Brislen

494947